**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Counsel for Plaintiff and the Proposed Class*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA CRYOBANK, LLC,<br><br>Defendant. | Case No.: 2:25-cv-02611<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND**<br><br>**ACTION SEEKING STATEWIDE AND NATIONWIDE RELIEF** |

1

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiff J.L.[1] individually and on behalf of all others similarly situated, ("Plaintiff") brings this Action against California Cryobank LLC ("California Cryobank" or "Defendant"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth, after a reasonable opportunity for discovery.

## I.    INTRODUCTION

1.    California Cryobank is a full-service sperm bank that provides frozen donor sperm and offers a variety of specialized reproductive services. It is the largest sperm bank in the United States, servicing all 50 states, as well as one of the largest in the world, servicing more than 30 countries worldwide.

2.    As a provider of reproductive services, California Cryobank assists a wide range of individuals and families, including those facing infertility or members of the LGBTQ+ community seeking donor-conceived children. Services include providing donor sperm, egg storage, and artificial insemination. To provide these reproductive services, California Cryobank recruits sperm donors who undergo a rigorous application process requiring physical examinations that include screening for infectious disease, genetic screening, examination of family history, and further evaluations in order to participate in the sperm donor program.[2]

3.    To become a sperm donor for California Cryobank, as well as to receive reproductive services like egg and embryo storage, donors and clients are required to entrust California Cryobank with their highly sensitive and personally identifiable information ("PII") and personal health information ("PHI") (collectively "Private

---

[1] Given the significant privacy concerns at stake, Plaintiff respectfully requests permission to proceed pseudonymously and anticipates filing a Motion to Proceed Pseudonymously as necessary.

[2] *Donor Semen*, CALIFORNIA CRYOBANK, https://www.cryobank.com/services/donor-semen/ (last accessed, March 25, 2025).

CLASS ACTION COMPLAINT

Information"), which California Cryobank uses to engage in its usual business activities.

4.     Due to the uniquely sensitive nature of its business, California Cryobank understands that maintaining confidentiality and discretion is paramount, as even the mere fact of an individual's association with California Cryobank is a highly sensitive matter.

5.     It also knows how important this is to clients and donors. To maintain competitive advantage, California Cryobank therefore prominently promises "your privacy is our top concern"[3], "[w]e are obligated by mutual agreements to maintain the anonymity and privacy of the donor, offspring, and parent/recipient"[4] and "California Cryobank recognizes the concerns regarding the rights to privacy and confidentiality on the part of the sperm donor, all parents, and the child."[5]

6.     Despite these promises to donors and clients, California Cryobank failed to protect the highly sensitive information with which it was trusted, compromising the personal and medical information of, at minimum, thousands of patients and donors (the "Data Breach"), as announced on March 14, 2025.[6] It did so by failing to comply with basic industry standards to protect information systems.

7.     The information compromised is of great concern, including highly sensitive and valuable PII and PHI such as sperm donor and reproductive client names along with bank account and routing numbers, payment card numbers, and health

---

[3]  *Privacy Policy,* CALIFORNIA CRYOBANK, https://www.cryobank.com/privacy-policy/ (last accessed, March 25, 2025).

[4]  *Donor Types*, CALIFORNIA CRYOBANK, https://www.cryobank.com/how-it-works/donor-types/ (last accessed, March 25, 2025).

[5]  *Anonymous   Donor   Contact   Policy*,   CALIFORNIA   CRYOBANK, https://www.cryobank.com/services/post-conception-services/anonymous-donor-contact-policy/ (last accessed, March 25, 2025).

[6]  Data Breach Notification Letter, COOPERSURGICAL, INC. C/O CYBERSCOUT, (March 14,   2025).   https://ago.vermont.gov/sites/ago/files/documents/2025-03-14%20California%20Cryobank%20Data%20Breach%20Notice%20to%20Consumers.pdf.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

insurance information.[7]

8.      Equally troubling, California Cryobank failed to provide timely and adequate notice to Plaintiff and other members of the Class that their Private Information had been accessed and compromised. Underscoring its grossly negligent business practices and deceptive intent, California Cryobank learned of the breach almost a full year ago—but hid it from the public until just last week.

9.      As a direct and proximate result of California Cryobank's inadequate security measures and disclosure of information to an unauthorized criminal third party, donors and clients suffered several injuries, including (i) out-of-pocket expenses associated with preventing, detecting, and remediating identity theft, social engineering, and other unauthorized use of their Private Information; (ii) opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iii) the continued, long term, and certain increased risk that unauthorized persons will access and abuse Plaintiff's and Class Members' Private Information; (iv) the continued and certain increased risk that the Private Information that remains in Defendant's possession is subject to further unauthorized disclosure for so long as Defendant fails to undertake proper measures to protect the Private Information; (v) invasion of privacy and disclosure of their personal information, as well as an increased risk of fraud and identity theft; (vi) theft of their Private Information and the resulting loss of privacy rights in that information; (vii) diminution in value and/or lost value of Private Information, a form of property that Defendant obtained from Plaintiff and Class Members.

10.     This action seeks to remedy these failings and their consequences including through injunctive and other equitable relief given Plaintiff and Class

---

[7] Lawrence Abrams, *Sperm donation giant California Cryobank warns of a data breach*, BLEEPINGCOMPUTER, (March 18, 2025) https://www.bleepingcomputer.com/news/security/sperm-donation-giant-california-cryobank-warns-of-a-data-breach/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Members' continuing interest in ensuring that their Private Information is and remains safe.

11.    While the privacy violation here is uniquely severe given the industry in which California Cryobank operates, even the most fundamental Private Information is valuable to cybercriminals to create seemingly legitimate, personalized phishing scams. The exfiltrated personal data, the full extent of which California Cryobank has failed to disclose to the public, allows hackers to gain a clear image of each individual and track their whereabouts, leading hackers to each victim's personal behavior and background. The combined data effectively provides criminals with a key to their personal lives, making it easy to match additional data, gaining access to personal accounts and insight into their preferences. As a result of the Data Breach, hackers are therefore now able to build a three-dimensional picture of California Cryobank's donors and clients for ongoing exploitation.

12.    The unique public outrage at California Cryobank's failures here makes sense. The fact that an individual provided sperm donations or received reproductive material or services is highly confidential and private information, and something that Plaintiff and the Class Members never anticipated becoming public knowledge or otherwise provided to unknown third parties. It is highly distressing for all impacted to know this information, together with other personally identifiable information and medical data, is now in the hands of cybercriminals.

13.    The unfortunate reality is this could have been avoided, had California Cryobank taken adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions. Instead, California Cryobank neglected industry standards, failed to take standard and reasonably available steps to prevent the Data Breach, including properly training staff and employees on proper security measures, all while promising donors and clients supreme security to maintain advantage in a highly sensitive and competitive industry. Had California Cryobank

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

properly monitored its computer network and systems that housed the Private Information, it would have discovered the intrusion sooner or prevented it altogether.

14.    California Cryobank has also been unjustly enriched. When clients purchase its services, they are paying for not only the services themselves but also for proper data management and security. Similarly, when donors provide their reproductive material and extensive medical information, they contribute invaluable biological and personal data and services that constitute the foundation of California Cryobank's business. Donors do not receive long-term compensation for the continued commercial use of their genetic material and health data, yet California Cryobank profits from these contributions including by marketing and selling access to donor sperm and related information. By failing to properly safeguard this data while continuing to derive revenue from it, California Cryobank has unjustly benefited at the expense of its donors.

15.    To protect clients and donors as promised, California Cryobank should have invested a greater portion of the monies received from Plaintiff and Class Members in proper data management and security, including proper and safe storage of Plaintiff's and Class Members' Private Information. But because it failed to implement data management and security measures sufficient to protect that data and comply with industry standards, the principles of equity and justice demand that California Cryobank not be permitted to retain the money that Plaintiff and Class Members generated through their contributions, as they did not receive the protection California Cryobank promised.

16.    Plaintiff brings this lawsuit on behalf of himself and all those similarly situated to address California Cryobank's inadequate safeguarding of Class Members' Private Information that it collected and then failed to maintain securely. To remedy these violations of law, Plaintiff and Class Members seek actual damages, statutory damages, restitution, reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

6

CLASS ACTION COMPLAINT

17.    They also seek injunctive and declaratory relief, including necessary improvements to California Cryobank's data security protocols and employee training practices, to prevent future breaches and otherwise properly protect the critical anonymity and privacy of donors, clients, and children conceived as a result of its services.

## II.    PARTIES

### *Plaintiff*

18.    **Plaintiff J.L.** is a natural person currently residing in Illinois. However, Plaintiff was a citizen and resident of California when he did business with Defendant and provided it with his Private Information. Plaintiff J.L. only allowed Defendant to maintain, store, and use his Private Information because he reasonably expected that Defendant would use proper security measures to protect his Private Information and prevent its access by unauthorized third parties. As a result of this expectation, Plaintiff J.L. entrusted his Private Information to Defendant, and his Private Information was within the possession and control of Defendant at the time of the Data Breach. Had Plaintiff J.L. been informed of Defendant's insufficient data security measures to protect his Private Information, he would not have willingly provided his Private Information to Defendant.

19.    Plaintiff J.L. was a sperm donor to California Cryobank beginning in 2012 and continued while he was a resident of Los Angeles County, California.

20.    In order to become a sperm donor for California Cryobank, the prospective donor is required to complete an online application form through which he must provide sensitive information including his full name, his birth date, contact information, substantial demographic information, and medical information for himself as well as the medical history of family members.

21.    Following the acceptance of his application, the donor is required to attend multiple office visits during which he provides multiple sperm samples, detailed social and medical information, his family's medical history, and other highly

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

personal medical information. The donor is also required to complete an extensive physical examination in addition to a psychological assessment and educational consultation, a criminal background check, MMPI/PAI screening, infectious disease testing, urinalysis, a blood panel, and extensive genetic testing. At each stage of the donor evaluation, this highly sensitive and private information is collected and stored by Defendant.

22. Once approved, the donor is subject to semen assessments every donation, reviews of changes in health and sexual partners every donation, monthly tests for Gonorrhea and Chlamydia, infectious disease testing and reviews of his updated medical and social information every three months, and physical examinations every six months.[8]

23. Upon information and belief, Plaintiff J.L.'s Private Information was exposed in the California Cryobank data breach, which occurred between April 20, 2024 and April 22, 2024.[9] As a former donor, Plaintiff J.L.'s donor files, containing all sensitive information collected through his donor application and during his tenure as a donor at California Cryobank, were stored by California Cryobank indefinitely and were therefore subject to the California Cryobank data breach.[10]

24. As a result of the Data Breach, Plaintiff has been further injured by the damages to and loss in value of his Private Information—a form of intangible property that Plaintiff entrusted to Defendant. This information has inherent value that Plaintiff

---

[8] *Sperm Donor Qualification Process*, CALIFORNIA CRYOBANK, https://d3hwulnyp980el.cloudfront.net/files/cryobankcom/_forms/pdf/brochures/donorpyramid.pdf (last accessed, March 25, 2025).

[9] Data Breach Notification Letter, COOPERSURGICAL, INC. c/o CYBERSCOUT, https://ago.vermont.gov/sites/ago/files/documents/2025-03 14%20California%20Cryobank%20Data%20Breach%20Notice%20to%20Consumers.pdf (last accessed, March 25, 2025).

[10] *Anonymous Donor Contact Policy*, CALIFORNIA CRYOBANK, https://www.cryobank.com/services/post-conception-services/anonymous-donor-contact-policy/ (last accessed, March 25, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

was deprived of when his Private Information was negligently made accessible to and intentionally and maliciously exfiltrated by cybercriminals.

25.    When Plaintiff's Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff suffered injury from a loss of privacy.

26.    Given the highly sensitive nature of the information involved, the Data Breach has also caused Plaintiff to suffer imminent harm arising from a substantially increased risk of additional fraud, identity theft, financial crimes, and misuse of his Private Information. This highly sensitive information is now in the hands of criminals as a direct and proximate result of Defendant's misconduct. It is also possible that other forms of information not yet disclosed by Defendant were lost in the Data Breach.

27.    As a result of the actual harm Plaintiff has suffered and the imminent and substantial risk of future harm, the Data Breach has forced Plaintiff to spend significant time and energy dealing with issues related to the Data Breach.

28.    The substantial risk of imminent harm and loss of privacy has also caused Plaintiff to suffer stress, fear, emotional distress, and anxiety.

29.    Defendant acknowledged the risk posed to Class Members and their Private Information as a result of the Data Breach, explicitly stating that "California Cryobank LLC and our affiliates (collectively "CCB") . . . are writing to inform you about a data security incident that may have involved some of your information" and "we deeply regret any inconvenience or concern this incident may cause and take this matter seriously," encouraging donors and clients to "remain vigilant about the possibility of fraud by reviewing your financial account statements for any suspicious activity" and to "immediately report any suspicious activity to your financial institution."

///

///

9

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

***Defendant***

30.    **Defendant California Cryobank** California Cryobank LLC is a Limited Liability company registered to conduct business in California with its principal place of business in Los Angeles, California. Defendant conducts business providing reproductive services to clients throughout California and the United States.

### III.  <u>JURISDICTION AND VENUE</u>

31.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332(d) because this is a class action where the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

32.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: Defendant's principal place of business is located in this District from where its board of directors and/or officers direct Defendant's activities including to their actions and inactions leading to the data breach at issue; Defendant gains revenue and profits from doing business in this District; and Class Members were affected by the breach from California Cryobank's actions and inactions directed from this District.

### IV.  <u>FACTUAL ALLEGATIONS</u>

33.    California Cryobank is a sperm bank and provider of reproductive services in California, United States with hundreds of sperm donors on offer and thousands of customers at any given time.[11] Defendant collects and processes the personal data of its donors and clients. To become a sperm donor for California

---

[11] Hailey Eber, *This L.A. Sperm Bank is More Exclusive than an Ivy League College*, LOS ANGELES MAGAZINE, https://lamag.com/featured/sperm-bank-california-cryobank (last accessed, March 25, 2025).

CLASS ACTION COMPLAINT

Cryobank or to purchase services from California Cryobank, donors and clients are forced to entrust Defendant with their Private Information.

34.    The information collected and stored by Defendant includes, but is not limited to, **names, bank account and routing numbers, payment card numbers, and health insurance information.**

35.    Defendant holds itself as a trustworthy company, which recognizes and values its donors' and clients' privacy and personal information and has repeatedly assured its donors and clients that their "privacy is [its] top concern."[12]

36.    Plaintiff and other similarly situated donors and clients relied to their detriment on Defendant's uniform representations and omissions regarding data security, including Defendant's failure to alert donors and clients that its security protections were inadequate, and that Defendant would indefinitely store Plaintiff's and Class Members' Private Information, failing to archive it, protect it, or at the very minimum warn consumers of the anticipated and foreseeable data breach.

37.    Plaintiff and other similarly situated donors and clients trusted Defendant with their sensitive and valuable Private Information.

38.    Had Defendant disclosed to Plaintiff and its other donors and clients that its data systems were not secure and were vulnerable to attack, Plaintiff would not have provided sperm donations for Defendant and other Class Members would not have provided sperm donations or purchased reproductive material or services from Defendant.

A.    **The Data Breach**

39.    At all material times, California Cryobank failed to maintain proper security measures despite its promises of safety and security to consumers.

40.    On April 21, 2024, Defendant identified unauthorized activity on certain computers in its information technology environment. Yet for nearly a year it stayed

---

[12] *Privacy Policy,* CALIFORNIA CRYOBANK, https://www.cryobank.com/privacy-policy/ (last accessed, March 25, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

silent. Defendant did not notify its affected donors and clients then, nor make any announcements to alert them of this major security issue. Specifically, an investigation conducted by Defendant revealed that personal information relating to certain California Cryobank donors and clients processed by the vendor was acquired by the threat actors between April 20, 2024, and April 22, 2024.

41.   On or about March 14, 2025, Defendant finally began notifying some donors and clients of the Data Breach, when nearly one year had passed since Defendant learned of the unauthorized access. On information and belief, not all individuals who have had information lost in the Data Breach have been properly notified by Defendant.

42.   In its statement, Defendant did not disclose how many donors' and clients' Private Information was breached, leaving many consumers to speculate whether it is likely that their PII/PHI has been compromised. Instead, Defendant downplayed the extent of the Data Breach, and the harm to affected victims.

**B.    Data Breaches and the Market for PII/PHI**

43.   It should be no surprise that in today's digital economy, "a new form of black gold has emerged, one that is intangible yet infinitely more powerful: data."[13] Personal data has become a "precious commodity," at the forefront of technological innovation.[14] Data is a pivotal economic asset and form of capital, allowing companies rich in it to drive competition. Considering the implications of "big data" in corporate America and the consequences of cyber thefts, which include heavy prison sentences, the value of data is axiomatic. Even this obvious risk-to-reward analysis illustrates beyond doubt that personal information has considerable market value.

---

[13] Lawrence Teixeira, *The New Black Gold: How Data Became the Most Valuable Asset in Tech*, MEDIUM (Feb 12, 2024), https://medium.com/@lawrenceteixeira/the-new-black-gold-how-data-became-the-most-valuable-asset-in-tech-9e4541262ddf# (last accessed, March 25, 2025).

[14] *Id.*

CLASS ACTION COMPLAINT

44.    In a consumer-driven world, the ability to capture and use consumer data to shape products, solutions, and the buying experience is critically important to a business's success.[15] Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin"[16] and that "[d]ata-driven companies are 23 times more likely to top their competitors in customer acquisition, about 19 times more likely to stay profitable and nearly seven times more likely to retain customers."[17]

45.    Indeed, an entire economy exists related to the value of personal data. In 2023, the big data technology market was valued at roughly $349 billion, and that value is expected to grow from roughly $397 billion in 2024 to $1,194 billion by 2032.[18]

46.    In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[19] In this paper,

[15] Laci Loew, *Data Differentiation: Why Consumer Data Is A Modern Organization's Real Competitive Advantage*, FORBES (October 2, 2024), https://www.forbes.com/councils/forbescommunicationscouncil/2024/10/02/data-differentiation-why-customer-data-is-a-modern-organizations-real-competitive-advantage/ (last accessed March 25, 2025).

[16] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, MCKINSEY (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data (last accessed March 25, 2025).

[17] Laci Loew, *Data Differentiation: Why Consumer Data Is A Modern Organization's Real Competitive Advantage*, FORBES (October 2, 2024), https://www.forbes.com/councils/forbescommunicationscouncil/2024/10/02/data-differentiation-why-customer-data-is-a-modern-organizations-real-competitive-advantage/ (last accessed March 25, 2025).

[18] *Big Data Technology Market Size, Share & Industry Analysis*, FORTUNE BUSINESS INSIGHTS (Jan. 2025), https://www.fortunebusinessinsights.com/industry-reports/big-data-technology-market-100144 (last accessed March 25, 2025).

[19] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, NO. 220 (Apr. 2,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[20] OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military [record] is estimated to cost USD 55."[21]

47.    Consumer concern for how companies use their data is on the rise. According to Pew Research, 81% of U.S. adults are concerned about how companies use the data they collect about them.[22] Consumers increasingly say they don't understand what companies are doing with their data, with 67% of U.S adults saying they understand little to nothing about what companies are doing with their personal data, up from 59% in 2019.[23]

48.    When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data, including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[24]

---

2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf (last accessed March 25, 2025).

[20] *Id.* at 25.

[21] *Id.*

[22] *How Americans View Data Privacy,* PEW RESEARCH CENTER (Oct. 18, 2023), https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/; *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[23] I*d.*

[24] *Data Breach Response: A Guide for Business*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/data-breach-response-guide-business (last accessed March 25, 2025).

CLASS ACTION COMPLAINT

49.    The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that resolution of those problems could take more than a year.[25] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

50.    The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[26] In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[27]

51.    As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and financial fraud.[28] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the "dark web."

52.    Further, criminals often trade stolen PII and PHI on the "cyber black-market" or "dark web" for years following a breach. Cybercriminals can, and do, post stolen PII and PHI on the internet, thereby making such information publicly available.

53.    When companies entrusted with personal data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harm

---

[25] *Victims of Identity Theft*, U.S. DEPARTMENT OF JUSTICE, (Sept. 2015), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last accessed March 25, 2025).
[26] *Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE, https://www.gao.gov/assets/700/697985.pdf (last accessed March 25, 2025).
[27] *Id.*
[28] *What To Know About Identity Theft*, FEDERAL TRADE COMMISSION, https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed March 25, 2025).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

irreparable.

54.    PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000 or more on the dark web and the legitimate data brokerage industry is valued at more than $250 billion.

55.    In this black market, criminals seek to sell the spoils of their cyberattacks to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts and otherwise engage in illegal financial transactions under the victims' names.

56.    PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. As alleged in more detail below, a growing market is for individuals' data.[29]

57.    In a study authored by Tim Morey, researchers studied the value that 180 internet users placed on keeping personal data secure.[30] Social security numbers were valued at $240 per year. Health history was valued at $38 per year.

58.    In 2023, the big data technology market was valued at roughly $349 billion, and that value is expected to grow from roughly $397 billion in 2024 to $1,194 billion by 2032.[31]

59.    Defendant knew or should have known that Plaintiff's and Class Members' Private Information is valuable, both to legitimate entities, like Defendant, and to cybercriminals.

---

[29] Emily Wilson, *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (Feb. 23, 2019), https://thenextweb.com/news/children-data-sold-the-dark-web (last accessed March 25, 2025).

[30] Tim Morey, *What's Your Personal Data Worth?*, DESIGN MIND, (Jan. 2011), https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html (last accessed March 25, 2025).

[31] *Big Data Technology Market Size, Share & Industry Analysis*, FORTUNE BUSINESS INSIGHTS (Jan. 2025), https://www.fortunebusinessinsights.com/industry-reports/big-data-technology-market-100144 (last accessed March 25, 2025).

16

CLASS ACTION COMPLAINT

60.    Defendant knew or should have known that Plaintiff and Class Members would reasonably rely upon and trust Defendant's promises regarding security and safety of its data and systems, and that their valuable Private Information would be protected.

61.    By collecting, using, selling, monitoring, and trafficking Plaintiff's and other Class Members' Private Information, and failing to protect it by maintaining inadequate security systems, failing to properly archive the Private Information, allowing access of third parties, and failing to implement security measures, Defendant caused harm to Plaintiff and other California Cryobank donors and clients.

## C.    **Defendant's Duty to Safeguard Private Information**

62.    Defendant collects, receives, and accesses donors' and clients' extensive individually identifiable information.

63.    Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that an entity's failure to maintain reasonable and appropriate data security for individuals' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

64.    The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

17

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

According to the FTC, the need for data security should be factored into all decision-making.[32]

66.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[33] The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

67.    The FTC further recommends that entities not maintain PII or PHI longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[34]

68.    Furthermore, the FTC requires that entities like Defendant conduct risk assessments, implement and periodically review access control, encrypt customer information, implement multi-factor authentication, dispose of customer information securely, maintain a log of authorized users' activity and keep an eye out of unauthorized access, train employees regarding security awareness, conduct audits, penetration testing, and system wide scans regularly to test for publicly known security vulnerabilities – all of which if properly implemented would have allowed Defendant to prevent this Data Breach.

---

[32] *Start With Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed March 25, 2025).

[33] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed March 25, 2025).

[34] *Start With Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed March 25, 2025).

18

69.    Defendant failed to properly implement basic data security practices, allowing for this data breach to occur, victimizing thousands of people – by failing to adhere to many of the FTC protocols and allowing access to a hacker who was able to exfiltrate substantial amounts of consumer data. Had Defendant maintained proper protocols and regularly conducted audits to ensure its vulnerabilities and training, it would have prevented this Data Breach.

70.    Plaintiff and Class Members provided their Private Information to California Cryobank with the reasonable expectation and mutual understanding that California Cryobank would comply with its obligations to keep such information confidential and secure from unauthorized access.

71.    California Cryobank's failure to provide adequate security measures to safeguard donors' and clients' Private Information is especially egregious because it operates in a field which has recently been a frequent target of scammers attempting to gain access to confidential PII/PHI.

**D.    Impact of the Data Breach on Consumers**

72.    Plaintiff and the Class have suffered actual harm as a result of Defendant's conduct. Defendant failed to institute adequate security measures that led to a data breach. This breach allowed hackers to access the Private Information, including at least the names, bank account and routing numbers, payment card numbers, and health insurance information, of Plaintiff and the Class. Now that the Private Information has been accessed and absconded with, it is available for criminal elements to sell or trade and will continue to be at risk for the indefinite future. In fact, the U.S. Government Accountability Office found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[35]

---

[35] *See* U.S. GOV'T ACCOUNTABILITY OFF. REPORT TO CONGRESSIONAL REQUESTERS 29 2007. https://www.gao.gov/new.items/d07737.pdf. (Last visited March 25, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

73.    Plaintiff and Class Members are now vulnerable to a full gamut of cybercrimes, loss in value of their property, and have been forced to take remedial action, as listed below.

### Digital Phishing Scams

74.    Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that people lost approximately $18.7 million to such scams in 2023 alone.[36]

75.    Defendant knew or should have known of the dangers of digital phishing scams. When Personal Information is employed in a social engineering scheme, criminals can gain unfettered access to individuals, or corporate databases, as the Data Breach itself evinces.

76.    Defendant's donors and clients are now more likely to become victims of digital phishing attacks because of the compromised information.

### Loss of Time

77.    As a result of this breach, Plaintiff and impacted consumers will suffer unauthorized email solicitations and experience a significant increase in suspicious phishing scam activity via email, phone calls, and text messages following the breach. In addition, Plaintiff, as a result of the breach, has spent significant time and effort researching the breach, monitoring his accounts for fraudulent activity, and dealing with increased unsolicited emails and texts.

### Threat of Identity Theft

78.    As a direct and proximate result of Defendant's breach of confidence, and failure to protect Private Information, Plaintiff and the Class have also been injured

---

[36] *Internet Crime Report*, FEDERAL BUREAU OF INVESTIGATION, (2023), https://www.ic3.gov/annualreport/reports/2023_ic3report.pdf scams (Last visited March 25, 2025).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this Private Information, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen Private Information, illegal sales of the compromised Private Information on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties; decreased credit scores, lost work time, and other injuries. Defendant, through its misconduct, has enabled numerous bad actors to sell and profit off of Private Information that belongs to Plaintiff.

**Out of Pocket Costs**

79.    Plaintiff is now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates spending out of pocket expenses to pay for these services in the future as well.

**Diminution in Value of a Valuable Property Right**

80.    Because personal data is valuable personal property, market exchanges now exist where internet users like Plaintiff and Class Members can sell or monetize their own personal data.

81.    Accordingly, as a result of the Data Breach, Plaintiff lost the sale value of his Private Information and the opportunity to control how it is used. That a threat actor specifically targeted Defendant demonstrates just how valuable Plaintiff's Private Information can be to hackers and the significant value of Plaintiff's Private Information to cybercriminals.

**Loss of Privacy and Dignitary Harm**

82.    A data breach represents a significant violation of privacy, extending far beyond the mere loss of data. When sensitive personal information is compromised, individuals face a cascade of potential harm that erodes their sense of security and control, as information that they thought would remain confidential and private has

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

21

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

now been leaked to the outside world, and which they no longer exercise control over. This exposure can lead to a profound sense of vulnerability, as individuals grapple with the knowledge that their most personal details are now in the hands of unknown actors, free to circulate and be publicized now, or at any time in the future.

83.    Information regarding an individual's health and medical choices, such as here, are some of the most personal and private types of information that exist. An individual's right to privacy regarding their body, their medical care, and their reproductive choices are some of the most sacrosanct and inviolable rights an individual can possess. Harm relating to an individual's loss of privacy and dignitary harm has also long been recognized by courts and in the common law.

84.    When an individual loses this privacy and their personal health and medical information is made public, such as here through its acquisition by criminal third parties, this harm cannot be undone. The Defendant's failure to safeguard this sensitive information has stripped Plaintiff and the Class Members of this essential control, exposing them to the potential for enduring emotional distress and the profound sense of vulnerability that accompanies the public exposure of deeply private matters.

85.    This is a fundamental violation of an individual's control over their own personal narrative and image to which they provide the world. By stripping Plaintiff and the Class Members from their right to control this information about themselves, Defendant has done immense harm to their rights to privacy as well as their personal dignity and bodily sovereignty. As a result, while difficult to quantify, this harm is very real, long-lasting, and severe and has caused real damage to Plaintiff and the Class Members, both emotionally as well as through their permanent loss of security and fundamental right to privacy and bodily autonomy.

///

///

///

22

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## **Summary of Actual Economic and Noneconomic Damages**

86.  In sum, Plaintiff and the Class Members were injured as follows:

   i.  Theft of their Private Information and the resulting loss of privacy rights in that information;

   ii.  Improper disclosure of their Private Information and the accompanying loss of privacy and dignitary harm;

   iii.  Loss of value of their Private Information;

   iv.  The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;

   v.  Defendant's retention of profits attributable to Plaintiff's and other donors' and clients' Private Information that Defendant failed to adequately protect;

   vi.  Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff is now exposed;

   vii.  Ascertainable out-of-pocket expenses and the value of Plaintiff's time allocated to fixing or mitigating the effects of this data breach;

   viii.  Overpayments for Defendant's products and/or services;

   ix.  Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this data breach.

**E.    Defendant Should Have Invested in Appropriate & Necessary Data Security**

87.  In the years immediately preceding the Data Breach, Defendant knew or should have known that its computer systems were a target for cybersecurity attacks.

88.  The FBI, FTC, GAO, U.S. Secret Service, United States Cybersecurity and Infrastructure Security Agency, State Attorney General Offices and many other government and law enforcement agencies, and hundreds of private cybersecurity and

23

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

threat intelligence firms, have issued warnings that put Defendant on notice, long before the Data Breach, that (1) cybercriminals were targeting companies who store personal health information, such as Defendant; (2) cybercriminals were ferociously aggressive in their pursuit of large collections of Private Information like that in possession of Defendant; (3) cybercriminals were selling large volumes of Private Information and corporate information on Dark Web portals; and (4) the threats were increasing.

89.    Prior to the Data Breach, Defendant thus knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated and utilized by nefarious individuals as the result of a cyberattack.

90.    Data security experts advise that "the vast majority of data breaches are preventable" if companies follow widely-available advice on data security practices, including "continually audit[ing] and reevaluat[ing]" their data security practices; being aware of and working proactively to counter cybercriminals' evolving techniques and approaches; and training and re-training their employees.[37]

91.    Defendant did not follow this advice; nor did it heed warnings from the U.S. Department of Health and Human Services as well as cybersecurity industry experts that the healthcare industry has become an increasingly common target for cybercriminals seeking valuable PHI. Had Defendant properly prepared itself and its employees to comply with industry standards, this Data Breach would have been preventable.

///

///

---

[37] Nate Nead, *How To Prevent A Data Breach In Your Company*, FORBES (Jul. 30, 2021), https://www.forbes.com/sites/forbesbusinesscouncil/2021/07/30/how-to-prevent-a-data-breach-in-your-company/?sh=3828f7b918da_ (last accessed March 25, 2025).

# V.    CLASS ALLEGATIONS

92.    Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated.

93.    Specifically, Plaintiff proposes the following classes (collectively, the "Class"):

**Nationwide Class:**

> All individuals whose PII was exposed while in the possession of Defendant, or any of its subsidiaries and/or agents, during the Data Breach.

**California Subclass:**

> All individuals who were citizens or residents of California when doing business with Defendant, whose PII was exposed while in the possession of Defendant, or any of their subsidiaries and/or agents, during the Data Breach.

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

94.    The Class is comprised of, at minimum, thousands of California Cryobank donors and clients who have both provided services for, and purchased services from, California Cryobank in the past and were part of the Data Breach (the "Class Members"). The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

95.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform false and misleading advertising and omissions. The

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant's conduct is an unlawful business act or practice within the meaning of California Business and Professions Code § 17200, *et seq.*;

b. Whether Defendant's conduct is in violation of California Civil Code § 56, *et seq.*;

c. Whether Defendant's failure to implement effective security measures to protect Plaintiff's and the Class's Private Information was negligent;

d. Whether Defendant breached express and implied warranties of security to the Class;

e. Whether Defendant represented to Plaintiff and the Class that it would protect Plaintiff's and the Class Members' Private Information;

f. Whether Defendant owed a duty to Plaintiff the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

g. Whether Defendant breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

h. Whether Class Members' Private Information was accessed, compromised, or stolen in the Data Breach;

i. Whether Defendant's conduct caused or resulted in damages to Plaintiff and the Class;

j. Whether Defendant failed to notify the public of the breach in a timely and adequate manner;

26

k.    Whether Defendant knew or should have known that its systems, including but not limited to training protocols and policies, left it vulnerable to the Data Breach;

l.    Whether Defendant adequately addressed the vulnerabilities that allowed for the Data Breach; and

m.    Whether, as a result of Defendant's conduct, Plaintiff and the Class are entitled to damages and relief.

96.    Plaintiff's claims are typical of the claims of the proposed Class, as Plaintiff and Class Members were harmed by Defendant's uniform unlawful conduct.

97.    Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action litigation and other complex litigation.

98.    The Class is identifiable and readily ascertainable. Notice can be provided to the Class Members using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

99.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

100.    The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

101.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief

27

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

102. Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, Class Members will continue to suffer losses and Defendant (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## VI.    CAUSES OF ACTION

### COUNT ONE

**Violation Of California Unfair Competition Law**

**Business & Professions Code Section 17200, *et seq.***

**(*On Behalf of the California Subclass*)**

103. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

104. For all Class members outside of the California Subclass, these claims are brought under the relevant consumer protection statute for the state in which they reside. For each state, the relevant statutes are as follows: Alabama—Deceptive Trade Practices Act (Ala. Code § 8-19-1, *et seq.*); Alaska—Unfair Trade Practices and Consumer Protection Act (Alaska Stat. § 45.50.471, *et seq.*); Arizona—Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*); Arkansas—Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*); Colorado—Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut—Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a, *et seq.*); Delaware—Consumer Fraud Act (Del. Code Ann. tit. 6, § 2511, *et seq.*); District of Columbia—D.C. Code § 28-3901, *et seq.*; Florida—Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.20, *et*

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  *seq.*); Georgia—Fair Business Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*);

2  Hawaii—Haw. Rev. Stat. § 480-1, *et seq.*); Idaho—Consumer Protection Act (Idaho

3  Code Ann. § 48-601, *et seq.*); Illinois—Consumer Fraud and Deceptive Business

4  Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*); Indiana—Deceptive Consumer

5  Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*); Iowa—Iowa Code § 7.14.16, *et seq.*);

6  Kansas—Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*); Kentucky—

7  Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.110, *et seq.*); Louisiana—Unfair

8  Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. § 51:1401, *et

9  seq.*); Maine—Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, § 205A, *et seq.*);

10  Maryland—Maryland Consumer Protection Act (Md. Code Ann., Com. Law § 13-

11  101, *et seq.*); Massachusetts—Regulation of Business Practice and Consumer

12  Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§ 1-11); Minnesota—False

13  Statement in Advertising Act (Minn. Stat. § 8.31, Minn. Stat. § 325F.67), Prevention

14  of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.*); Mississippi—Consumer

15  Protection Act (Miss. Code Ann. § 75-24, *et seq.*); Missouri—Merchandising

16  Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*); Montana—Unfair Trade Practices

17  and Consumer Protection Act (Mont. Code. Ann. § 30-14-101, *et seq.*); Nebraska—

18  Consumer Protection Act (Neb. Rev. Stat. § 59-1601); Nevada—Trade Regulation

19  and Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*, Nev Rev Stat. § 41.600); New

20  Hampshire—Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*);

21  New Jersey—N.J. Stat. Ann. § 56:8-1, *et seq.*); New Mexico—Unfair Practices Act

22  (N.M. Stat. § 57-12-1, *et seq.*); New York—N.Y. Gen. Bus. Law §§ 349, 350, N.Y.

23  Exec. Law § 63(12); North Carolina—N.C. Gen. Stat. § 75-1.1, *et seq.*); North

24  Dakota—N.D. Cent. Code § 51-15-01, *et seq.*); Ohio—Consumer Sales Practices Act

25  (Ohio Rev. Code Ann. § 1345.01, *et seq.*); Oklahoma—Consumer Protection Act

26  (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon—Unlawful Trade Practices Law (Or. Rev.

27  Stat. § 646.605, *et seq.*); Pennsylvania—Unfair Trade Practices and Consumer

28  Protection Law (73 Pa. Stat. Ann. § 201-1, *et seq.*); Rhode Island—Unfair Trade

Practice and Consumer Protection Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Carolina—Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*); South Dakota—Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*); Tennessee—Consumer Protection Act (Tenn. Code Ann. § 47-18-101, *et seq.*); Texas—Deceptive Trade Practices—Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*); Utah—Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*); Vermont—Consumer Fraud Act (Vt. Stat. Ann. tit. 9, § 2451, *et seq.*); Virginia—Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*); Washington—Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia—W. Va. Code § 46A-6-101, *et seq.*); Wisconsin—Wis. Stat. § 100.18, 100.20; Wyoming—Consumer Protection Act (Wyo. Stat. Ann. § 40-12-101, *et seq.*).

### A.  "Unfair" Prong

105. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, et seq., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provide to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

106. Defendant's conduct as alleged herein does not confer any benefit to consumers. Mishandling this data shows blatant disregard for its donors' and clients' privacy and security.

107.  Defendant's conduct as alleged herein causes injuries to consumers who do not receive goods or services consistent with their reasonable expectations. Specifically, Defendant's donors and clients would not have reason to believe that simply doing business with Defendant would place their Private Information in the hands of cybercriminals.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

108. Defendant's conduct as alleged herein causes injuries to its donors and clients, who entrusted Defendant with their Private Information and whose Private Information was leaked as a result of Defendant's unlawful conduct.

109. Defendant's failure to implement and maintain reasonable security measures was also contrary to legislatively declared public policy that seeks to protect consumers' data and ensure entities that are trusted with it use appropriate security measures. These policies are reflected in law, including the FTC Act, 15 U.S.C. §45, California's Consumer Records Act, Cal. Civ. Code §1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

110. Defendant's donors and clients cannot avoid any of the injuries caused by Defendant's conduct as alleged herein.

111. The injuries caused by Defendant's conduct as alleged herein outweigh any benefits.

112. Defendant's conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

113. Defendant could have furthered its legitimate business interests in ways other than its unfair conduct.

114. Defendant's conduct threatens members by misleadingly advertising its purported "commitment" to protecting Private Information while exposing members' Private Information to hackers. Defendant's conduct also threatens other entities, large and small, who play by the rules. Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

115. All of the conduct alleged herein occurs and continues to occur in Defendant's operations. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated consistently.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

116. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its unfair business practices.

117. Plaintiff and the Class would not have given Defendant their Private Information, had they known that their Private Information was vulnerable to a data breach. Plaintiff and Class Members seek an order mandating that Defendant implements adequate security practices to protect donors' and clients' Private Information. Additionally, Plaintiff and Class Members seek an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's unfair and unlawful practices.

### B.  "Fraudulent" Prong

118. California Business and Professions Code Section 17200, et seq. considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

119. Defendant's advertising and representations that it adequately protects consumer information are likely to deceive members of the public into believing that Defendant can be entrusted with Private Information, and that Private Information gathered by Defendant is not in danger of being compromised.

120. Defendant's representations about its commitments to data security, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable and constitute fraudulent conduct.

121. Defendant knew or should have known of its fraudulent conduct.

122. As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

123. Defendant could have implemented robust security measures to prevent the Data Breach but failed to do so.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

124. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

125. Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive representations about the strength or adequacy of its security systems. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations.

126. Plaintiff and the Class have suffered injury in fact as a result of Defendant's fraudulent conduct. Plaintiff believed that his information would be secure with Defendant when he acted as a donor, when Defendant in fact failed to institute adequate security measures and neglected vulnerabilities that led to the Data Breach. Plaintiff and the Class Members would not have done business with Defendant, either by providing sperm donations or purchasing reproductive material, if they knew that Defendant would maintain lax security that could make their personal information publicly known.

127. **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiff the Class seeks an order from this Court compelling Defendant to implement adequate safeguards to protect consumer Private Information retained by Defendant. This includes, but is not limited to improving security systems, deleting data that no longer needs to be retained by Defendant, archiving that data on secure servers, adopting adequate and robust training policies and protocols for all employees entrusted with access to Personal Information and notifying all affected consumers in a timely manner.

## C.  "Unlawful" Prong

128. California Business and Professions Code Section 17200, et seq., identifies violations of any state or federal law as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

129. Defendant's unlawful conduct, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.*

130. Defendant's conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unlawful conduct.

131. Defendant has engaged in "unlawful" business practices by violating numerous state and federal laws as well as common law causes of action as detailed further below.

132. Defendant knew or should have known of its unlawful conduct.

133. As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

134. Defendant could have furthered its legitimate business interests in ways other than by its unlawful conduct.

135. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

136. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unlawful business practices.

137. Plaintiff and the Class Members have suffered injury-in-fact and would not have done business with Defendant by providing or purchasing reproductive material, if they had known that their purchase would put their Private Information at risk. Plaintiff and the Class would not have given Defendant their Private Information had they known that their Private Information was vulnerable to a data breach. Likewise, Plaintiff and Class Members seek an order mandating that Defendant implement adequate security practices to protect Class Members' Private Information. Additionally, Plaintiff and the Class Members seek and request an order

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's unfair and unlawful practices.

138. Plaintiff and the Class Members are entitled to equitable relief as no adequate remedy at law exists.

    a.   Defendant has not yet implemented adequate protections to prevent a future data breach, nor has it given an adequate notice to all affected class members, and therefore, the equitable relief requested here would prevent ongoing and future harm.

    b.   Injunctive relief is also necessary to prevent the members of general public from being misled by Defendant's misrepresentations regarding privacy and security of information and also to implement the necessary security measures to protect the information that may later be in Defendant's possession.

    c.   The equitable relief under the UCL also creates a straightforward cause of action for violations of law (such as statutory or regulatory requirements related to representations and omissions made with respect to Defendant's services). Furthermore, damages for non-UCL claims require additional elements or pre-suit notice letters, which would potentially eliminate the possibility of providing damages to the entire class, while restitution would provide certainty and remedy for all affected victims.

    d.   Defendant has not disclosed full details surrounding its security failures and exactly how the cybercriminals gained access to the data, nor did Defendant implement any measures to ensure that the Private Information in Defendant's possession will be deleted. Therefore, injunctive relief would ensure and provide Plaintiff and the public with ability to control the access to their information, and limit the exposure of their Private Information.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

e.       In addition, discovery—which has not yet been provided and/or completed—may reveal that the claims providing legal remedies are inadequate. At this time, in the absence of completed discovery regarding class certification and merits, forcing an election of remedies at the initial pleadings stage is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

## COUNT TWO

**Violation of California Confidentiality of Medical Information Act, California Civil Code Section 56, *et seq.***

**(*On Behalf of the California Subclass*)**

139.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

140.  Defendant is subject to the requirements and mandates of the CMIA because it is a "contractor" and/or "provider of health care" pursuant to Cal. Civ. Code § 56.06.

141.  CMIA section 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

142.  As a direct result of its negligent failure to adequately protect the data it collected from the Plaintiff and Class Members, Defendant allowed for a Data Breach which released the PII/PHI of Plaintiff and the Class Members to criminals and/or third parties.

///

143. The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental or physical condition, or treatment."

144. The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the donors' and clients' name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

145. Defendant is in possession of affected individuals' medical information, as it has indicated that its donors' and clients' health insurance information was lost in the data breach. Thus, information relating to the health of donors and clients, at minimum, was exposed in the data breach. Further, the compromised data was individually identifiable because it was accompanied by elements sufficient to allow identification of Plaintiff by the third parties to whom the data was disclosed.

146. Defendant came into possession of Plaintiff's and Class Members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of the Plaintiff's and Class Members' medical records in a manner that preserved their confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, store, abandonment, destruction, or disposal of confidential medical information.

147. Defendant further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained Plaintiff's and Class Members' medical information, allowing and enabling a threat actor to view and access unencrypted PHI for Class Members.

148. Since Defendant maintained Plaintiff's and class members medical information in California, on California-based servers, where it was ultimately disclosed to third parties, CMIA equally applies to the entire affected Class. *See, e.g., Doe v. Meta Platforms, Inc.*, No. 22-cv-03580-WHO, 2023 U.S. Dist. LEXIS 158683, at \*16 (N.D. Cal. Sep. 7, 2023) (holding that another statute, CIPA, could apply to non-residents of California, because the conduct at issue occurred in California).

149. As a direct and proximate result of Defendant's violations of the CMIA, Plaintiff and class members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of one thousand dollars ($1,000) for each of Defendant's violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

## **COUNT THREE**

### **Negligence**

### (*On Behalf of the Nationwide Class*)

150. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

151. Defendant owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that consumers' Private Information was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

152. Defendant's duties to use reasonable care arose from several sources, including those described below. Defendant had a common law duty to prevent foreseeable harm to others, including Plaintiff and Class Members, who were the foreseeable and probable victims of any inadequate security practices.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

153. Defendant had a special relationship with Plaintiff and Class Members, which is recognized by laws and regulations, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to class members from a data breach. Plaintiff and Class Members were compelled to entrust Defendant with their Private Information. At relevant times, Plaintiff and Class members understood that Defendant would take adequate security precautions to safeguard that information. Only Defendant had the ability to protect Plaintiff's and Class Members' Private Information that it held.

154. Defendant knew or should have known that Plaintiff's and the Class Members' Private Information is information that is frequently sought after by criminals.

155. Defendant knew or should have known that Plaintiff and the Class members would suffer harm if their Private Information was leaked.

156. Defendant knew or should have known that its security systems were not adequate to protect Plaintiff's and the Class Members' Private Information from a data breach.

157. Defendant knew or should have known that adequate and prompt notice of the Data Breach was required such that Plaintiff and the Class could have taken more swift and effective action to change or otherwise protect their Private Information. Defendant failed to provide timely notice upon discovery of the data breach.

158. Defendant's conduct as described above constituted an unlawful breach of its duty to exercise due care in collecting, storing, and safeguarding Plaintiff's and the Class Members' Private Information by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, Defendant did not implement, design, or maintain adequate measures to detect a data breach when it occurred.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

159.  Defendant's conduct as described above constituted an unlawful breach of its duty to provide adequate and prompt notice of the data breach.

160. Plaintiff's and the Class Members' Private Information would have remained private and secure had it not been for Defendant's wrongful and negligent breach of its duties. The leak of Plaintiff's and the Class Members' Private Information, and all subsequent damages, was a direct and proximate result of Defendant's negligence.

161.  Defendant's negligence was, at least, a substantial factor in causing Plaintiff's and the Class's Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries arising out of the Data Breach.

162.  The damages suffered by Plaintiff and the Class were the direct and reasonably foreseeable result of Defendant's negligent breach of its duties to adequately design, implement, and maintain security systems to protect Plaintiff's and Class Members' Private Information.

163.  Defendant knew or should have known that its security for safeguarding Plaintiff's and Class Members' Private Information was inadequate and vulnerable to a data breach.

164.  Defendant's negligence directly caused significant harm to Plaintiff and Members of the Class.

## COUNT FOUR

### Breach of Express Contract

### (*On Behalf of the Nationwide Class*)

165.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

166. Plaintiff and other Class Members entered into valid and enforceable express contracts with Defendant under which Plaintiff and other Class Members agreed to provide their Private Information to Defendant, and Defendant agreed to

40

protect Plaintiff's and Class Members' Private Information.

167. Neither Plaintiff nor any Class member would have entered into these contracts with Defendant without the understanding that Plaintiff's and other Class Members' Private Information would be safeguarded and protected; stated otherwise, data security was an essential implied term of the parties' express contracts.

168. A meeting of the minds occurred, as Plaintiff and Class Members agreed, among other things, to provide their Private Information in exchange for Defendant's agreement to protect the confidentiality of that Private Information.

169. The protection of Plaintiff's and Class Members' Private Information was a material aspect of Plaintiff's and Class Members' contracts with Defendant.

170. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant; however, Defendant did not.

171. As a result of Defendant's breach of these terms, Plaintiff and Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; not getting the benefit of their bargain with Defendant; the lost difference in the value between the secure services Defendant promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the data breach on their lives; and the loss in privacy that they have already suffered simply due to their identities and association with Defendant being made public.

172. Additionally, Plaintiff and Class Members suffered emotional distress and diminution in the value of their information since their Private Information was unlawfully shared, and likely continues to reside in the possession of, third parties without their consent. Plaintiff and Class Members have been put at an increased risk of future identity theft, fraud, and/or misuse of their Private Information, which may take years to manifest, discover, and detect.

173. Plaintiff and Class Members are therefore entitled to damages.

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# COUNT FIVE

## Breach of Implied Contract

### (*On Behalf of the Nationwide Class*)

174.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

175.  At all relevant times, Defendant had a duty, or undertook and/or assumed a duty, to implement a reasonable data privacy and cybersecurity protocol, including adequate prevention, detection, and notification procedures, in order to safeguard the Private Information of Plaintiff and the Class Members, and to prevent the unauthorized access to and disclosures of this data.

176.  Among other things, Plaintiff and Class Members were required to disclose their Private Information to Defendant when doing business with it, as well as implied contracts for the Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

177.  When Plaintiff and Class Members provided their Private Information to Defendant, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

178.  By entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

179.  Under implied contracts, Defendant and/or their affiliated providers promised and were obligated to protect Plaintiff's and Class Members' Private Information. In exchange, Plaintiff and Members of the Class agreed to turn over their Private Information.

180.  The implied contracts that include the contractual obligations to maintain the privacy of Plaintiff's and Class Members' Private Information, are also acknowledged, memorialized, and embodied in multiple documents, including

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

42

(among other documents) Defendant's Data Breach notification and Defendant's Privacy Policy.

181. Defendant's express representations, including, but not limited to the express representations found in their notices of privacy practices, memorialize and embody the implied contractual obligations requiring Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

182. Plaintiff and Class Members performed their obligations under the contract when they provided their Private Information in consideration for Defendant's goods and/or services.

183. Defendant materially breached its contractual obligations to protect the Private Information it gathered when the information was accessed and exfiltrated during the Data Breach.

184. Defendant materially breached the terms of the implied contracts, including, but not limited to, the terms stated in the relevant notices of privacy practices. Defendant did not maintain the privacy of Plaintiff's and Class Members' Private Information as evidenced by their notification of the Data Breach to Plaintiff and Class Members.

185. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

186. As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive full benefit of the bargain they entered into.

187. Had Defendant disclosed that their security was inadequate or that they did not adhere to industry-standard security measures, neither Plaintiff, Class Members, nor any reasonable person would have entered into the aforementioned contracts with Defendant.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6

188.  As a direct and proximate result of the data breach, Plaintiff and Class Members have been harmed and suffered, and will continue to suffer, actual damages and injuries, including without limitation the release and disclosure of their Private Information, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, out of pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

7

## COUNT SIX

8

### Breach of Express Warranty

9

### (*On Behalf of the Nationwide Class*)

10
11

189.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

12
13

190.  Defendant made an express warranty to Plaintiff and Class Members that it is committed to protecting the Private Information entrusted to it.

14
15
16
17

191.  Defendant's express warranties regarding its security standards made to Plaintiff and the Class appear throughout its Privacy Policy. The promise of security is associated with the offerings and products, and therefore becomes the basis of the bargain.

18
19
20
21

192.  Plaintiff and the Class engaged in business with Defendant, including entrusting it with their Private Information, with the expectation that the information they provided would be kept safe, secure, and private in accordance with the express warranties made by Defendant.

22
23
24
25

193.  Defendant breached the express warranties made to Plaintiff and Class Members by failing to provide adequate security to safeguard Plaintiff's and the Class's Private Information. As a result, Plaintiff and Class Members suffered injury and deserve to be compensated for the damage they suffered.

26
27

194.  Plaintiff and other Class Members would not have done business with Defendant if they knew that their Private Information would be exposed as a result.

28

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

195.  As a direct and proximate result of Defendant's violations, Plaintiff and the Class have suffered and continue to suffer injury.

196. Plaintiff and the Class are therefore entitled to recover all available remedies for this breach of express warranty.

## COUNT SEVEN

### Breach of Confidence

### (*On Behalf of the Nationwide Class*)

197.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

198. Plaintiff and Class Members maintained a confidential relationship with Defendant whereby Defendant undertook a duty not to disclose to unauthorized parties the Plaintiff's and Class Members' Private Information to unauthorized third parties. Such Private Information was confidential and novel, highly personal and sensitive, and not generally known.

199. Defendant knew Plaintiff's and Class Members' Private Information was being disclosed in confidence and understood the confidence was to be maintained, including by expressly and implicitly agreeing to protect the confidentiality and security of the Private Information they collected, stored, and maintained.

200. As a result of the Data Breach, there was an unauthorized disclosure of Plaintiff's and Class Members' Private Information in violation of this understanding. The unauthorized disclosure occurred because Defendant failed to implement and maintain reasonable safeguards to protect the Private Information in its possession and failed to comply with industry-standard data security practices.

201. Plaintiff and Class Members were harmed by way of an unconsented disclosure of their confidential information to an unauthorized third party.

202. But for Defendant's disclosure of Plaintiff's and Class Members' Private Information in violation of the parties' understanding of confidence, their Private

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Information would not have been compromised, stolen, viewed, accessed, or used by unauthorized third parties.

203. Defendant knew its computer systems and technologies for accepting, securing, and storing Plaintiff's and Class Members' Private Information had serious security vulnerabilities because it failed to observe standard security practices or correct known security vulnerabilities.

204. The Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' Private Information, as well as the resulting damages.

205. The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information.

206. As a direct and proximate result of Defendant's violations, Plaintiff and the Class have suffered and continue to suffer injury.

## COUNT EIGHT

### Invasion of Privacy

### (*On Behalf of the Nationwide Class*)

207. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

208. Plaintiff and the Class Members had a reasonable and legitimate expectation of privacy in their Private Information that Defendant failed to adequately protect against compromise from unauthorized third parties.

209. Defendant owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

210. Defendant failed to protect, and released to unknown and unauthorized third parties, the Private Information of Plaintiff and Class Members.

211. By failing to keep Plaintiff's and Class Members' Private Information safe, knowingly utilizing unsecure systems and practices, Defendant unlawfully invaded Plaintiff's and Class Members' privacy by, among others, (i) intruding into

46

Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their Private Information from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of Plaintiff's and Class Members' Private Information without consent.

212.  Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

213.  Defendant knew, or acted with reckless disregard of the fact that, organizations handling PII or PHI are highly vulnerable to cyberattacks and that employing inadequate security and training practices would render them especially vulnerable to data breaches.

214.  As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted, thereby causing Plaintiff and the Class Members undue harm.

215.  Plaintiff seeks injunctive relief on behalf of the Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT NINE

### Unjust Enrichment

### (*On Behalf of the Nationwide Class*)

216.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

217.  Defendant funds its data security measures entirely from their general revenues, including payments made by or on behalf of Plaintiff and Class Members.

218. A portion of the payments made by or on behalf of Plaintiff and Class Members was to be used to provide the necessary level of data security.

219. Plaintiff and the Class conferred a monetary benefit on Defendant by doing business with Defendant, and in doing so provided Defendant with their most sensitive Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the products that were subject to the transaction and had their PII protected with adequate data security measures.

220.  Defendant knew that Plaintiff and the Class conferred a benefit which it accepted, and through which Defendant was unjustly enriched.

221.  Defendant enriched itself by saving the costs they reasonably should have spent on the necessary data security measures to secure Plaintiff's and the Class Members' Private Information. Instead of providing the necessary level of security that would have prevented the Data Breach, Defendant instead calculated to increase their own profits at the expense of Plaintiff and the Class, by using ineffective security measures, failing to pay money for the much-needed training of their employees, failing to conduct the audits, implementing other security measures discussed above. Plaintiff and the Class suffered an injury as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and training.

222.  Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class, because it failed to implement appropriate data management and security measures as mandated by common law and statutory duties.

223.  If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information, nor would they have done business with Defendant.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

224. Plaintiff and the Class have no adequate remedy at law as discussed above.

225.  Defendant should be compelled to disgorge its profits and/or proceeds that it unjustly received as a result of having Plaintiff's and Class Members' Private Information, or alternatively, Defendant should be compelled to refund the amounts that Plaintiff and the Class overpaid for its goods.

## COUNT TEN
**Invasion Of Privacy by Public Disclosure of Private Facts and Intrusion Upon Seclusion**
**(*On Behalf of the Nationwide Class*)**

226.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

227.  Plaintiff's and Class Members' Private Information is and always has been private and confidential.

228.  Dissemination of Plaintiff's and Class Members' Private Information is not of a legitimate public concern; publication to third parties of their Private Information would be, is and will continue to be, offensive to Plaintiff, Class Members, and other reasonable people.

229.  By failing to keep Plaintiff's and Class Members' Private Information secure and disclosing Private Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion.

230.  Defendant's wrongful actions and/or inaction constituted, and continue to constitute, an invasion of Plaintiff's and Class Members' privacy by publicly disclosing their Private Information.

231.  Defendant's intrusions were substantial and would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

232.  Plaintiff and the Class Members were, and continue to be, damaged as a direct and proximate result of Defendant's invasion of their privacy by publicly disclosing their Private Information, for which they suffered loss and are entitled to compensation.

233.  As a direct and proximate result of Defendant's violations, Plaintiff and the Class have suffered and continue to suffer injury.

## COUNT ELEVEN

### Declaratory Judgment and Injunctive Relief

### (*On Behalf of the Nationwide Class*)

234.  Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

235.  The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

236.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

237.  Defendant owes a duty of care to Plaintiff and Class Members which require it to adequately secure its Private Information when it chose to accept and store Plaintiff's and Class Members' Private Information.

238.  Defendant still possesses Plaintiff's and Class Members' Private Information.

239.   Defendant does not specify in the Data Breach notification what specific and verifiable steps it has taken to prevent a similar breach from occurring again.

240.  Plaintiff and Class Members are at risk of harm due to the exposure of their Private Information and the Defendant's failures to address the security failings that lead to such exposure.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

241. An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Private Information.

242. Plaintiff and the Class, therefore, seek a declaration that (1) each of Defendant's existing security measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect consumers' Private Information, and (2) to comply with its duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

    a.    Prohibiting Defendant from engaging in the wrongful acts stated herein (including Defendant's utter failure to provide notice to all affected consumers);

    b.    Requiring Defendant to implement adequate security protocols and practices to protect consumers' Private Information consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

    c.    Mandating the proper notice be sent to all affected consumers, and posted publicly;

    d.    Requiring Defendant to protect all data collected through any account creation requirements;

    e.    Requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

f.   Requiring Defendant to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

g.   Requiring Defendant to engage independent third-party security auditors and conduct internal security audit and testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

h.   Requiring Defendant to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

i.   Requiring Defendant to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

j.   Requiring Defendant to conduct systematic scanning for data breach related issues;

k.   Requiring Defendant to train and test its employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the Private Information data; and

l.   Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

243. The Court can, and should, issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with the law and industry standards to protect Plaintiff's and Class Members' Private Information.

CLASS ACTION COMPLAINT

244. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of the Defendant's systems or networks. The risk of another breach is real, immediate, and substantial.

245. The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. If another data breach occurs, the Plaintiff and the Class will likely be subjected to fraud, identity theft, and other harms described herein. However, the cost to the Defendant of complying with an injunction by employing reasonable prospective data security measures is minimal given they have preexisting legal obligations to employ these measures.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests judgment and relief on all causes of action as follows:

A. That the Court determines that this Action may be maintained as a Class Action, that Plaintiff be named as Class Representative of the Class, that the undersigned be named as Class Counsel of the Class, and that notice of this Action be given to Class Members;

B. That the Court enter an order declaring that  Defendant's actions, as set forth in this Complaint, violate the laws set forth above;

C. That the Court enter an order providing declaratory and injunctive relief including specific steps, as outlined above, requiring Defendant to utilize appropriate methods and policies as necessary to remediate the harm suffered by Plaintiff and the Class members as well as to prevent future harm and properly secure its data;

D. That the Court award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

E.     That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendant to which Plaintiff and the Class are entitled, including but not limited to restitution and an Order requiring Defendant to cooperate and financially support recovery efforts;

F.     That the Court award Plaintiff and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

G.     That the Court award Plaintiff and the Class their reasonable attorneys' fees and costs of suit;

H.     That the Court award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I.     That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

## VIII.    <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury for all claims so triable.

DATED: March 25, 2025                    Respectfully submitted,

                                                 **CLARKSON LAW FIRM, P.C.**

                                                 */s/ Yana Hart*
                                                 Ryan Clarkson, Esq.
                                                 Yana Hart, Esq.
                                               Bryan P. Thompson, Esq.